## CITY OF ST. LOUIS v. BARNEY KRUEMPELER, Appellant.

**In Banc, July 1, 1911.**

1. **MILK ADULTERATION: Added Water: Percentage of Milk Solid.** The statute (Sec. 6595, R. S. 1909) does not mean to say that skim milk is not adulterated by the addition of water so long as it contains "not less than 9.25 per cent of milk solids." It means that whatever may be the percentage of

St. Louis v. Kruempeler.

milk solids after the water is added, the adding of water to skim milk is unlawful. The city makes out a case when it shows that water was added.

2. ———: **Milk Solids: Standard Fixed by U. S. Department: Judicial Notice.** The statute (Sec. 6595, R. S. 1909) provides that food shall be deemed to be adulterated "if it does not conform to the standard of strength, quality and purity now or hereafter to be established by the United States Department of Agriculture." *Held,* that courts do not take judicial cogniz-ance of the rules, regulations and orders of the administrative departments of the United States Government; and if there was no proof offered at the trial that said department had established a standard for skim milk of "not less than 9.25 per cent of milk solids," the court will not assume that such a standard has been established.

3. ———: ———: ———: **Conflict Between Statute and Ordinance.** And without the standard as fixed by the Department of Agriculture in the record there is nothing by which to test or establish a conflict between said statute (Sec. 6595) and an ordinance declaring that no person shall have in his possession, with intent to sell, milk which is adulterated by the addition of any substance that lowers or depreciates its strength or purity.

4. ———: **No Standard of Strength Fixed by Ordinance: Added Water.** Where defendant is charged with selling skim milk to which water has been added, in violation of an ordinance which prohibits the addition of any substance to milk that lowers or depreciates its strength, quality or purity, it will not be held that said ordinance is void for that is does not fix a standard of strength for skim milk, though it be conceded that the largest constituent of skim milk is water and that the percentage of water in natural milk constantly varies, and more widely after skimming. It is unlawful under that ordinance to add water with the intention to sell the mixture as milk.

5. ———: **Conflicting With Statute.** Said ordinance is not in conflict with Sec. 640, R. S. 1909. The ordinance covers a phase of the offense of adulterating milk omitted from the statute, and where the statute is silent the ordinance may speak.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Benjamin J. Klene,* Judge.

AFFIRMED.

*William L. Bohnenkamp* and *E. F. Stone* for appellant.

(1)   At the time this prosecution was begun, the State law required that skim milk, to be saleable in this State, should contain not less than 9.25 per cent of total solids, saying nothing about the percentage of water, non-fatty solids or ash.   In other words, if such milk contained 9.25 per cent of total solids, or more, it could not be deemed adulterated, and its sale could not be prohibited or prevented anywhere in this State.   The strength, quality and purity for skimmed milk was regulated and established by a certain percentage of total solids, and nothing more.   This was the particular regulation for this specified product, and took it out of any general provisions applying to adulteration of food products in general, relative to strength, quality and purity.   (2).   Therefore, said ordinance is void, with reference to the strength and quality of skimmed milk, as being in conflict and inconsistent with Laws 1907, p. 240, subdiv. 10, establishing standards for skimmed milk for this State.   Said act provides that the standard for strength and quality for skimmed milk shall be, "not less than 9.25 per cent of milk solids."   Said standard being the same as established by the U. S. Dep. of Agriculture.   St. Louis v. Klausmeier, 213 Mo. 119.   The evidence showed that the total solids of this sample was 10.10 per cent; thereby fully complying with the State law as to strength and quality, the State law requiring that such milk have only 9.25 per cent total solids, to be saleable as to strength and quality.   All that a party was required to do, to comply with and be protected by the State law, as to strength and quality, was to have it contain not less than 9.25 per cent total solids, and therefore, not more than 90.75 per cent of water.   Under the evidence herein the sample showed upon   analysis   that   it   contained   less   than 90.75   per   cent   of   water,   to-wit,   89.90   per

cent of water. Therefore, as to compliance with the State law, said sample could not be adulterated by the use of "water." Its strength and quality could not have been lowered or depreciated by the use of "water," and its sale was sanctioned and authorized anywhere in this State by and under the State law, and hence, could not be prohibited by any ordinance of any city in the State. The ordinance cannot denounce the sale of that which the statute authorizes. "To hold otherwise would be to subject the statute of the State to the operation of the ordinance of the city." St. Louis v. Klausmeier, 213 Mo. 129; St. Louis v. Meyer, 185 Mo. 593; Dillon on Mun. Corp. (4 Ed.), sec. 329. (3) Ordinance 24297 is void for vagueness and uncertainty. It provides that milk or cream shall be deemed adulterated, "If any substance or substances have been mixed with it so as to lower or depreciate or injuriously affect the strength, quality or purity." It is uncertain and indefinite, because it fails to fix, directly or indirectly, expressly or impliedly, any standard or measure of strength, quality or purity, for milk or cream. How then can it be determined whether its strength or quality, as required to be done in this case, has been lowered or depreciated? How can it be said that the strength of a food product has been reduced or lowered so as to constitute a violation of law, when no standard of strength is pointed out by the law itself? Railroad v. Com., 99 Ky. 136; Tozer v. U. S., 52 Fed. 917; Cook v. State, 26 Ind. App. 278; Com. v. Roy, 140 Mass. 432; McConville v. Mayor, 39 N. J. L. 38; Lusk v. Chicago, 176 Ill. 207.

*Lambert E. Walther* and *A. H. Roudebush* for respondent.

(1). Circular 19, U. S. Dep. of Agriculture, as to milk standards, was not offered in evidence, and will not be judicially noticed on appeal. Nagle v. U. S., 145 Fed. 302; The E. A. Packer, 140 U. S. 360; U. S. v.

Bedgood, 49 Fed. 54; Hensley v. Tarpey, 7 Cal. 288; Moore v. Werthington, 63 Ky. 307. 2. So far as the Act of March 15, 1907, attempts to adopt the standards fixed by the U. S. Department of Agriculture, it is void as a delegation of legislative power. Const. Mo., art. 4, sec. 1; art. 2, sec. 2. 3. The Act of 1907 also forbids adulteration in the same language as the ordinance, and therefore the milk standards said to be established by it cannot be construed to authorize adulteration. Laws 1907, p. 239, sec. 4, cl. 1. 4. If the Act of 1907 is to be construed as authorizing adulteration it is repealed by the Act of 1909 forbidding it. Laws 1909, pp. 118, 119, sec. 10. 5. If the Act of 1907 has the effect of establishing a standard for skimmed milk, it is repealed by Act of 1909 defining other standards. Laws 1909, p. 117, cl. 3. 6. There is no conflict between the statute and the ordinance because the former does not authorize the adulteration which is prohibited by the latter. St. Louis v. Klausmeier, 213 Mo. 127. (2) Ordinance 24297 is sufficiently definite and clearly defines the offense here involved, and the charge is supported by the evidence.

LAMM, J.—This is one of eight cases so briefed as to test the validity of the milk ordinances of St. Louis in one or another phase. Some of those cases have already been written, viz., Ameln's, Meyer's and Kellman's, all handed down at this delivery. Any questions in the instant case common to the Ameln, Meyer or Kellman cases and there ruled will not be again considered. The curious in that behalf may consult those cases, which are reported at pages 669, 699, and 687, respectively, of this Report.

On April 30, 1909, Kruempeler was charged in due form with violating ordinance No. 24297, approved March 26, 1909, in that, contrary to the terms of said ordinance at a time, to-wit, the 22d day of April, and at a place in St. Louis, to-wit, Newstead and Farlin

avenues, he did then and there have in his possession, with the intent to sell and offer and expose for sale, skim milk, adulterated by mixing a substance known as water therewith so as to lower and depreciate its strength and quality.

At the trial the city proved its milk inspector took a sample of skim milk from defendant's milk wagon at the time and place charged in the complaint, sealed it in a bottle and turned bottle and contents over to Dr. Moody, assistant city chemist. Dr. Moody testified he analyzed the milk sample and found it contained "added water," the effect of which lowers and depreciates its quality and strength. On cross-examination, he said he was not an eye witness to adding any water to the milk, and that the total solids of the sample were 10.10 per cent. The city then offered in evidence ordinance 24297. Defendant objected to the ordinance for certain reasons enumerated. The objection was overruled. Whereat defendant read into the record sections 499 and 505 of the Revised Code of St. Louis, 1907.

(*Nota bene*: The material parts of ordinance 24297 and sections 499 and 505 of the Revised Code of St. Louis appear, *ipsissimis verbis*, in said Ameln case, and they will not be here set out.)

From a conviction and fine of $25 in the court of criminal correction on an appeal from the first district police court, Kruempeler appeals.

As in companion cases, sundry questions were raised below in appropriate and formidable motions and exceptions were saved to lay the foundation for an appellate review of all of them. But as only certain of them are presented in briefs, the others will be put aside. Those raised on this record are:

*First.* Ordinance 24297 is void as in conflict with an act of the Legislature. [Laws of 1907, p. 240, subdivision 10 of section 4.]

*Second.* Further, is void for vagueness and uncertainty.

*Third.* Further, is void as in conflict with section 10 of another act of the Legislature. [Laws 1909, p. 118.] (And herein of the contentions that the ordinance is broader than the statute and is repealed by implication.)

Those contentions will be disposed of in the order named.

I. In 1907 the General Assembly passed an act relating to the adulteration of foods and drugs. [Laws 1907, p. 238.] Section 4 of that act is now section 6595, Revised Statutes 1909. The parts pertinent are: .

"Food shall be deemed to be adulterated: 1. If any substance or substances have been mixed with it so as to lower or depreciate or injuriously affect its strength, quality or purity. . . . 6. . . . And in the case of dairy products, if any such product be drawn or produced from cows fed on unhealthy or unwholesome food, or on waste, slops, refuse, leavings or residue of any nature or kind from distilleries, breweries or vinegar factories, or on food in a state of putrefaction, or from cows diseased in any way, . . . or, 10. If it does not conform to the standard of strength, quality and purity now or hereafter to be established by the United States department of agriculture."

Learned counsel seek to root their theory in the words of clause 10 of section 6595. They ingeniously argue after this fashion: The United States department of agriculture has established a standard for skim milk at "not less than 9.25 per cent of milk solids." Such standard, they say, became an integral part of our statute and must be read into it. In short, if the Federal department of agriculture does but establish a standard, that standard, *ex vi termini*, is instantly read into clause 10 of section 6595, supra;

or if that department does but change its stand-
ard for skim milk, then our statute, *ex vi ter-
mini*, automatically opens to throw out the old
and take in the new standard as part and parcel of the
body of our law. Based on such premise, the conclusion
is that our statutory standard for skim milk is the
standard of said department of agriculture, viz., 9.25
per cent of milk solids. Accordingly, the mere question
of watering milk is eliminated or rejected by the law-
maker as outside the domain of legislative policy.
Therefore, there is a direct conflict between ordinance
24297 and clause 10 of section 6595, Revised Statutes
1909.

The situation thus presented, delicate and baffling
on first blush, may be profitably developed a little
further. Thus: Counsel in their reply brief repudiate
the idea that their defense is based on any assumed
right, natural or vested, to water milk, or that their
client stands for the proposition that he may lawfully
add water to his milk and sell it at the price of (and as
and for) milk.

Responding to that view of it, we cheerfully do
them the justice of saying we have not a particle of
doubt of their sincerity in taking that position. Never-
theless, we must follow the reason of the thing, and
reason points the other way. To illustrate: The
United States department of agriculture, they say,
recognizes a standard for skim milk as milk containing
9.25 per cent total solids. That standard is read into
our statute *per* force of its own terms. The per cent
of solids, deducted from 100 per cent, leaves remaining
an allowable 90.75 per cent of water. (Observe, now,
the conclusion of counsel quoted from their brief.)
"Therefore, as to compliance with the State law, said
sample" (the sample in question) *"could not be adulter-
ated by the use of 'water.'* Its strength and quality *could
not have been lowered or depreciated by the use of 'water,'
and its sale was sanctioned and authorized anywhere in*

*this State by and under the State law, and could not be prohibited by any ordinance of any city in the State.*"

It would be toying with the matter to shut our eyes to the plain drift—the inevitable and only end of that theory. Its end, looming large, is seen from the start. It means this: The milkman, after the cow is through watering her own milk, may himself add water from the spring, *ad libitum*, so long as the total per cent of her milk solids remains 9.25 per cent. You may add water, but do so with circumspection. Be careful and *scientific* about it. Keep your eye on the solids while adding the water, because the standard pertains to solids only; *ergo*, permits water so long as the proper per cent of milk solids remains. The consumer (the public) has no concern with "added water." He looks alone to the per cent of solids left in the milk when tendered him for potable or table use. Seal up the milk can to scientific investigation as to added water and leave it open to only one query, viz.: Do the solids fall below the standard? If so, water may have been added; if not, it has not been added in contemplation of law.

Of that position, it may be said: If science could not detect "added water," except through the per cent of milk solids remaining then there would be substance in the contention that the statute repudiates an investigation for water in milk having standard solids. We dealt with that phase of the matter in the Ameln case and now can add nothing more.

It was argued orally at this bar, on one side, that a scientific analysis of milk could detect the presence of added water. And, *contra*, on the other, that it was exceedingly difficult to do so and that any result reached is either inconclusive, arbitrary or whimsical. But in briefs that feature is not dealt with. To the contrary, the force of the argument of defendant's counsel is spent on the proposition that so long as the standard for solids is maintained, the statute permits

the sale of the milk; that such milk *cannot be* adulterated by water or its strength or quality be lowered or depreciated by added water.   On such theory the testimony of an eye witness that he saw the milkman add water would be rejected so long as the standard solid remains. If that argument does not spell in letters so large that he who runs may read, a statutory *permission* to add water up to a given point, what does it spell?   We decline to follow its lead, and leave the subject by pointing out that the testimony of the chemist established the fact that water was added.   That testimony stands unimpeached.

Passing to a closer view of the question, we confront the proposition that we do not judicially know the standard established for skim milk by the United States department of agriculture.   Defendant's brief says it is 9.25 per cent.   Counsel left in our files a document purporting to be the regulations of that department, but it was not introduced in evidence below; therefore, may not be taken into account here.   Courts do not take judicial cognizance of the rules, regulations and orders of administrative departments of the United States government.   (See authorities cited in respondent's brief, appearing in the reporter's notes.   In those cases the reasons for the rule are gone into.)

The United States standard when read into our statute  being the premise upon which conflict between ordinance and statute is predicated, we do not say that a conflict would exist if such standard was in the record, but we do say that without the standard in the record (as here) there is nothing by which to test or establish a conflict.

This view makes unnecessary any consideration of further contentions of counsel for the city, viz., (1) that clause 10 of section 6595 is void as a delegation of legislative power; and (2) that the ordinance, as well as clause 1 of said section, forbid adulteration by mixing any substance with milk which lowers or depreciates its

strength or quality, therefore, the establishment of the standard contended for is not to be construed as authorizing adulteration; and (3) the further contention that if it, the statute, be construed to authorize adulteration by adding water, then it is repealed by the Act of 1909, forbidding adulteration and establishing other standards. [ *Vide*   Sec. 640, R. S. 1909.]

The premises considered, the point is ruled against defendant.

II.   Is ordinance 24297 void for uncertainty and vagueness?   The answer to that question is:   No. Because:

Its vagueness and uncertainty are said to consist in the fact that it fails to fix directly or indirectly any standard or measure of strength, quality or purity for milk—that is, that the law should fix a standard of strength on account of the known fact that the largest constituent of skim milk is "water" and that the percentage of water in natural milk constantly varies, and more widely after skimming.   But all this is wide of the mark.   The answering proposition is that it is unlawful for the milkman to add water to his milk with the intention to sell the mixture as milk.   How the city may *prove* the addition of water is another matter.   If it fail to prove that fact, the prosecution should fail.   In the Ameln case it was argued that the ordinance should be aided by the complaint, which should set forth the standard.   Thus the identical argument against the ordinance, now in hand, was there turned against the complaint itself.   We disallowed it then and disallow it now.   [See the Ameln case.]   It was also considered in the Meyer case.   [See that case.]

The point is ruled against defendant.

III.   Is ordinance 24297 void as in conflict with section 640, Revised Statutes 1909?   That proposition was ruled against defendant in the third paragraph of the Ameln case and we remain content with that ruling.   [*Quod vide.*]

In this connection it is contended that the ordinance is broader than the statute and is repealed by implication. Counsel do not point out the excess of breadth. As to repeal by implication that would arise in case of conflict and we ruled in the Ameln case there was no conflict. If by being too broad counsel mean that the ordinance deals with a phase of the matter omitted from the statute entirely, then the contention resolves itself into the proposition ruled in St. Louis v. Klausmeier, 213 Mo. p. 119, viz., that where the statute is silent the ordinance may speak.

The premises considered, the judgment should be affirmed. It is so ordered. All concur, except *Valliant*, *C. J.*, who dissents.